# NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY *v.* NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 128.   Argued January 4, 1897. — Decided March 1, 1897.

The statutes of New York regulating the heating of steam passenger cars, and directing guards and guard-posts to be placed on railroad bridges and trestles and the approaches thereto (Laws of 1887, c. 616, Laws of 1888, c. 189), were passed in the exercise of powers resting in the State in the absence of action by Congress, and, when applied to interstate commerce, do not violate the Constitution of the United States.

THE case is stated in the opinion.

*Mr. John M. Bowers* for plaintiff in error.

.*Mr. Theodore E. Hancock*, Attorney General of the State of New York, and *Mr. W. H. Dennis* for defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

A statute of New York passed June 18, 1887, regulating the heating of steam passenger cars and directing guards and guard-posts to be placed on railroad bridges and trestles and the approaches thereto, Laws of N. Y. 1887, c. 616, p. 828, provides: "§ 1. It shall not be lawful for any steam railroad doing business in this State, after the first day of May, eighteen hundred and eighty-eight, to heat its passenger cars, on other than mixed trains, by any stove or furnace kept inside of the car or suspended therefrom, except it may be lawful, in case of accident or other emergency, to temporarily use such stove or furnace with necessary fuel. Provided, that in cars which have been equipped with apparatus to heat by steam, hot water or hot air from the locomotive, or from a special car, the present stove may be retained, to be used only when the car is standing still. And provided also that this act shall not apply to railroads less than fifty miles in length, nor to the use of stoves, of a pattern and kind to be approved by the railroad commissioners, for cooking purposes in dining-room cars. § 2. After November first, eighteen hundred and eighty-seven, guard-posts shall be placed in the prolongation of the line of bridge trusses so that in case of derailment the posts and not the bridge trusses shall receive the blow of the derailed locomotive or car. § 3. Any person or corporation violating any of the provisions of this act shall be liable to a penalty of one thousand dollars, and to the further penalty of one hundred dollars for each and every day during which such a violation shall continue. § 4. Upon the application of any railroad covered by the provisions of this act, the board of railroad commissioners may approve of any proposed safe-guard or device to be used under the provisions of this act, and thereafter the railroad using such safeguard or device so approved shall not be liable to any of the penalties prescribed by this act for a violation thereof in regard to any such safe-

guard or device. § 5. The violation of any of the provisions of this act will be deemed a misdemeanor. § 6. This act shall take effect immediately."

A subsequent statute, passed April 27, 1888, Laws of N. Y. 1888, c. 189, p. 250, so amended the first section of the act of 1887 that the heating of passenger cars on other than mixed trains by a stove or furnace kept inside the car or suspended therefrom did not become unlawful until after November 1, 1888. The amendatory act further provided that in special cases, the board of railroad commissioners could extend the time for a period not exceeding one year from November 1, 1888, for any steam railroad doing business in New York to heat its passenger cars by stoves or furnaces kept inside the car or suspended therefrom.

The present action was brought to recover penalties imposed for the violation of the above statutes.

The complaint filed in behalf of the People of New York charged the defendant, the New York, New Haven and Hartford Railroad Company, a corporation of Connecticut, with having, in the operation of its railroad, on the 2d day of November, 1888, and on every subsequent day down to and including December 31, 1888, run trains of passenger cars over its route from the city of New York to Hartford and from Hartford to that city, and heated said cars, both on through trains and over that part of its road in New York on other than mixed trains, by stoves and furnaces kept within such cars, "as the regular and usual method of heating said cars and in cases other than those of accident and other emergency"; and that the board of railroad commissioners of New York had not extended the time of the defendant to heat its passenger cars by any stove or furnace kept inside its cars.

There was a verdict and judgment against the railroad company for the sum of $7000 and $479.81 costs, disbursements and allowance; in all, $7479.81. That judgment was affirmed by the Court of Appeals of New York, 142 N. Y. 646.

It is contended that the above statute of New York is repugnant to section 8 of Article I of the Constitution of the United

States providing that Congress shall have power to regulate commerce among the several States, and to make all laws necessary and proper to carry such power into execution, and also to the Fourteenth Amendment of the Constitution of the United States, declaring that no State shall deprive any one of property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

As these questions were properly raised in the state court, there is no doubt of our jurisdiction to reëxamine the final judgment against the railroad company. Rev. Stat. § 709.

According to numerous decisions of this court (some of which are cited in the margin[1]) sustaining the validity of state regulations enacted under the police powers of the State, and which incidentally affected commerce among the States and with foreign nations, it was clearly competent for the State of New York, in the absence of national legislation covering the subject, to forbid under penalties the heating of passenger cars in that State, by stoves or furnaces kept inside the cars or suspended therefrom, although such cars may be employed in interstate commerce. While the laws of the States must yield to acts of Congress passed in execution of the powers conferred upon it by the Constitution, *Gibbons* v. *Ogden*, 9 Wheat. 1, 211, the mere grant to Congress of the power to regulate commerce with foreign nations and among the States did not, of itself and without legislation by Congress, impair the authority of the States to establish such reasonable regulations as were appropriate for the protection of the health, the lives and the safety of their people. The statute in question had for its object to protect all persons travelling in the State of New York on passenger cars moved by the agency of steam against the perils attending a particu-

---

[1] *Gibbons* v. *Ogden*, 9 Wheat. 1, 203, 211; *Willson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 245; *Cooley* v. *Philadelphia Board of Wardens,* 12 How. 299, 320; *Gilman* v. *Philadelphia*, 3 Wall. 713; *Sherlock* v. *Alling*, 93 U. S. 99, 104; *Mobile* v. *Kimball*, 102 U. S. 691; *Escanaba Co.* v. *Chicago*, 107 U. S. 678; *Morgan* v. *Louisiana*, 118 U. S. 455, 463; *Huse* v. *Glover*, 119 U. S. 543; *Smith* v. *Alabama*, 124 U. S. 465; *Nashville &c. Railway* v. *Alabama*, 128 U. S. 96, 100; *Western Union Telegraph Co.* v. *James*, 162 U. S. 650, 662; *Hennington* v. *Georgia*, 163 U. S. 299, 317.

lar mode of heating such cars. There may be reason to doubt the efficacy of regulations of that kind. But that was a matter for the State to determine. We know from the face of the statute that it has a real, substantial relation to an object as to which the State is competent to legislate, namely, the personal security of those who are passengers on cars used within its limits. Why may not regulations to that end be made applicable, within a State, to the cars of railroad companies engaged in interstate commerce as well as to cars used wholly within such State? Persons travelling on interstate trains are as much entitled, while within a State, to the protection of that State, as those who travel on domestic trains. The statute in question is not directed against interstate commerce. Nor is it within the meaning of the Constitution a regulation of commerce, although it controls, in some degree, the conduct of those engaged in such commerce. So far as it may affect interstate commerce, it is to be regarded as legislation in aid of commerce and enacted under the power remaining with the State to regulate the relative rights and duties of all persons and corporations within its limits. Until displaced by such national legislation as Congress may rightfully establish under its power to regulate commerce with foreign nations and among the several States, the validity of the statute, so far as the commerce clause of the Constitution of the United States is concerned, cannot be questioned.

Counsel for the railroad suggests that a conflict between state regulations in respect of the heating of passenger cars used in interstate commerce would make safe and rapid transportation impossible; that to stop an express train on its trip from New York to Boston at the Connecticut line in order that passengers may leave the cars heated as required by New York, and get into other cars heated in a different mode in conformity with the laws of Connecticut, and then at the Massachusetts line to get into cars heated by still another mode as required by the laws of that Commonwealth, would be a hardship on travel that could not be endured. These possible inconveniences cannot affect the question of power in each State to make such reasonable

regulations for the safety of passengers on interstate trains as in its judgment, all things considered, is appropriate and effective. Inconveniences of this character cannot be avoided so long as each State has plenary authority within its territorial limits to provide for the safety of the public, according to its own views of necessity and public policy, and so long as Congress deems it wise not to establish regulations on the subject that would displace any inconsistent regulations of the States covering the same ground.

Our attention is called to the clause in the act of June 15, 1866, c. 124, 14 Stat. 66, now a part of section 5258 of the Revised Statutes of the United States, providing " that every railroad company in the United States whose road is operated by steam, its successors and assigns, be and is hereby authorized to carry upon and over its road, boats, bridges and ferries, passengers, troops, government supplies, mails, freight and property on their way from any State to another State, and to receive compensation therefor and to connect with roads of other States so as to form continuous lines for the transportation of the same to the place of destination." We fail to perceive that this statute has any bearing upon the question now before the court. The authority conferred by it upon railroad companies engaged in commerce among the States, whatever may be the extent of such authority, does not interfere in any degree with the passage by the States of laws having for their object the personal security of passengers while travelling, within their respective limits, from one State to another on cars propelled by steam.

But it is contended that the statute is repugnant to the clause of the Fourteenth Amendment forbidding a State from denying to any person within its jurisdiction the equal protection of the laws. This contention is based upon that clause of the statute declaring that it shall not apply to railroads less than fifty miles in length. No doubt the main object of the statute was to provide for the safety of passengers travelling on what are commonly called trunk or through lines, connecting distant or populous parts of the country, and on which the perils incident to travelling are greater than on

short, local lines. But as suggested in argument, a road only fifty miles in length would seldom have a sleeping car attached to its trains; and passengers travelling on roads of that kind do not have the apprehension ordinarily felt by passengers on trains regularly carrying sleeping cars or having many passenger coaches, on account of the burning of cars in case of their derailment or in case of collision. In any event, there is no such discrimination against companies having more than fifty miles of road as to justify the contention that there has been a denial to the companies named in the act of the equal protection of the laws. The statute is uniform in its operation upon all railroad companies doing business in the State of the class to which it is made applicable.

One of the assignments of error questions the validity of the statute upon the ground that it deprives the plaintiff in error of its property without due process of law. As the action against the company was instituted and conducted to a conclusion under a valid statute, the defendant being before the court, there is no reason to hold that there was any want of the due process of law required by the Fourteenth Amendment.

The judgment is

*Affirmed.*

MR. JUSTICE GRAY did not sit in this case or take any part in its decision.