## W. W. SMITH v. THE STATE.

### No. 867. Decided December 13, 1912.

#### Rehearing Denied May 1, 1912.

1.—Railway Conductor—Constitutional Law—Police Regulation—Interstate Commerce.

The Act of March 11, 1909, providing that a railway conductor must have served or worked in the capacity of a brakeman or conductor on a freight train for two years, etc., before he shall act as a conductor on a passenger railway train, is constitutional, and a due exercise by the Legislature of the police power of the State, and does not interfere with the regulation of interstate commerce.

2.—Same—Sufficiency of the Evidence.

Where, upon trial of unlawfully engaging in the business of conductor on a railway train, the evidence sustained the conviction, there was no reversible error.

3.—Same—Constitutional Law—Right of Contract.

The Act of March 11, 1909, regulating railroad conductors is not unconstitutional on the ground that it prevents the free right of contract.

4.—Same—Legislative Discretion.

While it may be that others than those authorized under the Act of March 11, 1909, may be just as competent to act as conductors as those authorized by said Act, yet this was a question for the Legislature and not the court.

5.—Same—Discrimination.

The Act of March 11, 1909, is not discriminatory because it applies to lines of railway which are twenty-five miles or more in length.

Appeal from the County Court of Gregg. Tried below before the Hon. J. H. McHaney.

Appeal from a conviction of unlawfully acting as railroad conductor; penalty, a fine of $25.

The opinion states the case.

*Terry, Cavin & Mills* and *Young & Stinchcomb* and *A. H. Culwell,* for appellant.—On the question of the unconstitutionality of the law: Zillmer v. Kreutzburg, 90 N. W. Rep., 1098; Lochner v. State, 198 U. S., 45; Adair v. United States, 208 U. S., 161; Allgeyer v. Louisiana, 165 U. S., 578; Goldfield v. Goldfield, 159 Fed., 500; State v. Association Press, 60 S. W. Rep., 91; Lawton v. Steele, 152 U. S., 133; Gulf, C. & S. F. Ry. v. Ellis, 165 U. S., 150; 22 Am. & Eng. Ency. of Law, 938 et seq.; Poteet v. State, 53 S. W. Rep., 869; Rainey v. State, 53 S. W. Rep., 882; Ex parte Overstreet, 46 S. W. Rep., 825; Ex parte Jones, 43 S. W. Rep., 513; Ex parte Woods, 52 Texas Crim. Rep., 575, 108 S. W. Rep., 1171; Owens v. State, 53 Texas Crim. Rep., 105, 112 S. W. Rep., 1075; Pullman Palace Car Co. v. State, 64 Texas, 274.

*C. E. Lane,* Assistant Attorney-General, for the State.

PRENDERGAST, JUDGE.—The appellant was prosecuted, tried and convicted under section 2 of the Act of March 11, 1909, p. 92, and fined $25 in that on July 22, 1910, he did unlawfully act as a conductor on a railroad freight train of the Texas & Gulf Railway Company, in this State, which railroad company was a corporation duly incorporated under the laws of Texas, without having for two years prior thereto served or worked in the capacity of a brakeman or conductor on a freight train on a line of railroad, he not then acting as such conductor on said train in case of the disability of a conductor while out on the road between divisional terminals, and not acting as a conductor on said train in case of an emergency where the said railway company could not obtain a person to act as conductor who had for two years prior thereto served or worked in the capacity of a brakeman or conductor on a freight train on a line of railroad and not acting as conductor on said train in this State on a line of railway less than twenty-five miles in length, the said Texas & Gulf Railway Company at that time not being less than twenty-five miles in length.

Said section 2 of said Act is: "If any person shall act or engage to act as a conductor on a railroad train in this State without having for two (2) years prior thereto served or worked in the capacity of a brakeman or conductor on a freight train on a line of railroad, he shall be deemed guilty of a misdemeanor, and shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars, and each day he so engages shall constitute a separate offense."

Sections 4 and 4a thereof are: "Sec. 4. Nothing in this Act shall be construed as applying to the running or operating of engines, in taking said engines to or from trains at division terminals by engine hostlers, or of the shifting of cars or making up trains, or doing any work appurtenant thereto at engine houses, tram or freight yards by switchman or yardman, or in the case of the disability of an engineer or a conductor while out on the road between division terminals. In case of emergency where such companies can not obtain the employees mentioned in this Act who have the qualifications prescribed by this Act, but no such employment shall continue longer than such companies can supply their respective places with men who have the qualifications prescribed by this Act; and provided further, that nothing herein contained shall relieve any of such companies from the negligence of any of its employees.

"Sec. 4a. The provisions of this Act shall not apply to any railroad company within this State or the receiver, lessee thereof, whose line of railway is less than twenty-five miles in length."

Section 5 states, in substance: "The fact that there are now no adequate laws in this State prohibiting the running of . . . trains on railroads by inexperienced . . . conductors, thus endangering the lives of the traveling public and employees of said railroads, creates an emergency and an imperative public necessity requiring the

suspension of the constitutional rule, which requires bills to be read on three several days in each House," then enacts that such rule is suspended and that the Act take effect from its passage.

The proof, without contradiction, shows all of the facts alleged against appellant in accordance with the said law.

The appellant proved in addition thereto that he had been working in the capacity of a locomotive engineer on the railway of said railway company for a number of years; that he had been a fireman and engineer on a locomotive engine and had been on engines in such capacity, pulling freight trains, mixed trains and passenger trains. That a locomotive engineer learns as much about how a freight train should be operated by a conductor as a brakeman or conductor, and that acting as an engineer on a freight train will better acquaint one with the knowledge of how to operate a freight train than acting as a brakeman. That under the rules of all railroads, and of said railway company, the engineer is held equally responsible with the conductor for the safe operation of all the trains. All orders are given to the engineer as well as to the conductor; every order sent to a conductor on a train is made in duplicate and one copy is given to the conductor, and the other to the engineer that if anything should happen to disable the conductor or in any way prevent his proceeding with his train, the engineer is to immediately take charge of the train and handle it into the terminal; the engineer is constantly with the train and knows all the signals, knows how the couplings are made, the cars switched and distributed, and how they are taken into train and transferred from one place to another and is so constantly associated with all the work of the conductor that he should know as much about how the freight train should be operated by a conductor as the conductor himself. All acts of the conductor that pertain to the safe operation of the train are being carried on in his presence and within his observation all the time. The matter of handling waybills and ascertaining the destinations of the cars in his train is easy and plain and it does not take a person that has had experience as a conductor to understand that part of his service. The waybills are plainly written and the destinations are plainly given, and booking the waybills and delivering them with the cars is clerical, and can be done by anyone that can read and write and who has ordinary sense. Every act that is done by the conductor toward the safe handling of the train also has to be done by the engineer and all of the conductor's acts with reference to this are in the view and observation of the engineer.

The appellant himself testified, and was not disputed, that he was forty-seven years old; that his business at that time was passenger engineer on the said railway. His first service in railroad business was twenty-two years prior thereto when he began firing a locomotive engine on the St. Louis, Iron Mountain & Southern Railway out of

Little Rock, Arkansas, which position he held for three years and then began running an engine on that road, which he did for three years and then came to Longview, in Gregg County, where this prosecution was had, where he began working in the shops of said Texas & Gulf Railway Company and worked at that one year. While firing and running an engine on said Iron Mountain Railroad he was on engines pulling freight trains. After working in the shops at Longview for one year he went to firing locomotive engines and running extra as engineer on said Texas & Gulf Railway Company and continued in that service for three years. During that entire time he was on engines pulling freight trains; after that he went to running an engine regularly as an engineer that pulled a mixed train, which carried both freight and passengers. He continued in this service eight years and ran from Timpson to Longview, and returned every day for eight years, except when laid off, which was seldom. After that he acted as engineer of a passenger train on the same road and had been in that business and holding that position for four years at the time of the trial. As fireman or engineer on engines pulling freight trains, he learned all the acts of the conductor in handling trains and knew everything that had to be done by a conductor for the safe operation of a train; knew all the signals to be given and that are given by all of the train men; knew all the rules and regulations that pertain to the service of a conductor on a freight train; learned all this by having been fireman and engineer on trains in constant train work and directly associated with conductors on trains in the service of operating trains; that he acted as conductor on said railroad in Gregg County, on July 22, 1910, as conductor thereon and brought said train from Carthage to Longview (a distance greater than twenty-five miles); that in said train were fourteen cars of freight and two passenger coaches. He then showed that in that train were some cars, containing freight, destined to places in Kansas, Oklahoma, Missouri, all originating in Texas, besides other cars containing local freight for places in Texas. Also that he never acted as brakeman or conductor on a line of railway at any place prior to July 22, 1910, and never served or worked in any way as a brakeman or conductor on a freight or other train prior to July 22, 1910; that he was employed by said Texas & Gulf Railway Company to act as conductor on said train July 22, 1910, and did so upon the direction of the superintendent thereof. That he operated said train from Carthage to Longview on said date with safety, and knew how to perform all the details of the work as conductor thereof; that no accident occurred to the train and he brought it in at the usual time; that he fully understood ever part of the work to be done as conductor before he took charge of the train, and in the operation as conductor he found no duties to perform other than what he knew about; that he had never acted as a conductor or brakeman on a freight or other train prior to that time and

never had had two years experience prior thereto as a brakeman or conductor and had never had any experience prior to that time as a brakeman or conductor.

The appellant in several ways, which were altogether regular and proper, attacked the prosecution and conviction, substantially on the grounds, that the said Act of the Legislature was unconstitutional and void, and in violation of both the Federal and State Constitutions, because it prevents the free right of contract on the part of railway companies and individuals and prevents one from earning a livelihood and from voluntarily engaging in an avocation of life to which he is well adapted, and is an unreasonable, unwarranted and unnecessary interference with the rights of persons to make contracts for employment, and tends to deprive citizens of the right to make an honest living in callings that they have voluntarily selected and are capable of pursuing.

He also attacked the said ·Act of the Legislature and his conviction, claiming the said Act was an unlawful interference with Interstate Commerce.

These points are raised by appellant and restated in substance over and over again, and he properly raised the said questions. We deem it unnecessary to give in detail their various objections which are but repetitions in different language and different form of the same thing.

We also deem it unnecessary to discuss in detail and separately these questions, but will pass upon them together.

There is no question but that this Act of the Legislature was intended to be within the police power of the State. In the case of Lochner v. New York, 198 U. S., 45, in passing on the constitutionality of an Act of the State of New York prohibiting employees of bakers from working longer than sixty hours a week and ten hours a day, the Supreme Court of the United States, in discussing the police power of a State and the validity of said Act under the Federal Constitution, among other things, said: "There are, however, certain powers existing in the sovereignty of each State in the Union, somewhat vaguely termed police powers, the exact description and limitation of which have not been attempted by the courts. Those powers, broadly stated, and without, at present, any attempt at a more specific limitation, relate to the safety, health, morals and general welfare of the public. Both property and liberty are held on such reasonable conditions as may be imposed by the governing power of the State in the exercise of those powers, and with such conditions the Fourteenth Amendment was not designed to interfere. Mugler v. Kansas, 123 U. S., 623, 31 L. ed., 205, 8 Sup. Ct. Rep., 273; Re Kemmler, 136 U. S., 436, 34 L. ed., 519, 10 Sup. Ct. Rep., 930; Crowley v. Christenson, 137 U. S., 86, 34 L. ed., 620, 11 Sup. Ct. Rep., 13; Re Converse, 137 U. S., 624, 34 L. ed., 796, 11 Sup. Ct. Rep., 191.

"The State, therefore, has power to prevent the individual from

making certain kinds of contracts, and in regard to them the Federal Constitution offers no protection. If the contract be one which the State, in the legitimate exercise of its police power, has the right to prohibit, it is not prevented from prohibiting it by the Fourteenth Amendment. . . ."

Again, the Supreme Court of the United States, in Nashville, etc., R. R. Co. v. Alabama, 128 U. S., 96, among other things, said: "Indeed, it is a principle fully recognized by decisions of State and Federal courts, that wherever there is any business in which, either from the products created or the instrumentalities used, there is danger to life or property, it is not only within the power of the States, but it is among their plain duties to make provisions against accidents likely to follow in such business, so that the dangers attending it may be guarded against so far as is practicable.

"In Smith v. Alabama, this court, recognizing previous decisions where it had been held that it was competent for the State to provide redress for wrongs done and injuries committed on its citizens by parties engaged in the business of Interstate Commerce, notwithstanding the power of Congress over those subjects, very pertinently inquired: 'What is there to forbid the State, in the further exercise of the same jurisdiction, to prescribe the precautions and safeguards foreseen to be necessary and proper to prevent by anticipation those wrongs and injuries which, after they have been inflicted, it is admitted the State has power to redress and punish? If the State has power to secure to passengers conveyed by common carriers in their vehicles of transportation a right of action for the recovery of damages occasioned by the negligence of the carrier in not providing safe and suitable vehicles or employees of sufficient skill and knowledge, or in not properly conducting and managing the act of transportation, why may not the State also impose, on behalf of the public, as additional means of prevention, penalties for the nonobservance of these precautions? Why may it not define and declare what particular things shall be done and observed by such a carrier in order to insure the safety of the persons and things he carries, or of the persons and property of others liable to be affected by them?' Of course, but one answer can be made to these inquiries, for clearly what the State may punish or afford redress for, when done, it may seek by proper precautions in advance to prevent. And the court in that case held that the provisions in the statute of Alabama were not strictly regulations of Interstate Commerce, but parts of that body of the local law which governs the relation between carriers of passengers and merchandise and the public who employ them, which are not displaced until they come in conflict with an express enactment of Congress in the exercise of its power over commerce, and that until so displaced they remain as the law governing carriers in the discharge of their obligations, whether engaged in purely internal commerce of the State, or in commerce among the States. The same

observations may be made with respect to the provisions of the State law for the examination of parties to be employed on railways with respect to their powers of vision. Such legislation is not directed against commerce, and only affects it incidentally, and therefore can not be called, within the meaning of the Constitution, a regulation of commerce. As said in Sherlock v. Alling, 93 U. S., 99 (23, 919), legislation by a State of that character, 'relating to the rights, duties and liabilities of citizens, and only indirectly and remotely affecting the operations of commerce, is of obligatory force upon citizens within its territorial jurisdiction, whether on land or water, or engaged in commerce, foreign or interstate, or in any other pursuit.'"

In that case an Act of the Legislature of Alabama required persons to be examined for color blindness and prohibited only such as passed such examination from serving in certain capacities on railroads.

The Act of the Legislature of this State requiring the appointment, under certain conditions, of pilots and prohibiting others from following or engaging in that business, has been sustained not only by the courts of this State, but by the Supreme Court of the United States. (Peterson v. Board, 24 Civil App., 33, 57 S. W., 1002; Olsen v. Smith, 68 S. W. Rep., 320; same case, 195 U. S., 332.) Also the courts of this State have uniformly sustained the Acts of the Legislature thereof providing for public weighers in certain cities and towns thereof and prohibiting others from engaging in such business, even though they were competent and able to engage therein and had theretofore earned and were then engaged in earning a living by pursuing such business. (Davidson v. Saddler, 23 Civil App., 600, 57 S. W., 54; Johnson v. Martin, 75 Texas, 33.) Also the courts of this State have upheld the constitutionality of the Acts of the Legislature and of the cities of Texas prohibiting and making it a penal offense for any other than the agent of a railroad company to sell passenger tickets. (Janning v. State, 42 Texas Crim. Rep., 631; Ex parte Hughes, 50 Texas Crim. Rep., 614, 100 S. W., 160.) See also Dankworth v. State, 61 Texas Crim. Rep., 157, 136 S. W. Rep., 788.

It may be that others than those authorized under said Act of the Legislature in discussion here may be just as competent to act as conductors as those authorized by said Act. In fact, they might be better qualified, and it might be contended that the Legislature ought to have permitted other persons, shown to be so competent by other means than those only authorized by this Act to act as such conductor. But this court has no power or authority to substitute its opinion for that of the Legislature. This is held by all of the authorities. There is no contention in this case that the experience and knowledge gained by a brakeman, who runs on freight trains for two years, or who has acted as conductor for two years on a freight train, has not thereby gained a knowledge and experience that would fit him in every way thereafter to act as conductor on a train. That someone else may be equally qualified would not show that the Legislature

had no power or authority to prohibit any other from pursuing such business. It is in effect the laws of all the States that no one can practice law, as an attorney, or practice medicine, as a physician, who does not stand examination and procure a license to do so, and there are regulations of numerous professions, occupations and businesses than can not be pursued under the laws, unless the persons desiring to do so stand certain examinations and procure a license or permission authorizing it. Others equally as qualified, or probably more so, than those who are thus authorized, are prohibited from engaging in such professions or occupations and such laws are universally upheld.

We deem it unnecessary to cite text-book authorities or cases further on this subject. Recognizing and applying the well known universal rule that the courts must presume that an Act of the Legislature is valid unless clearly shown to be unconstitutional, it is our opinion that the Act of the Legislature attacked in this case is not unconstitutional on any of the grounds claimed by the appellant, nor does it unlawfully interfere with Interstate Commerce or undertake to regulate such commerce.

The judgment will, therefore, be affirmed.

*Affirmed.*

### ON REHEARING.

#### May 1, 1912.

PRENDERGAST, JUDGE.—By his motion for rehearing appellant presents and urges again all of the grounds originally contended for by him.

However, in his argument on the motion, as we understand it, he presents and urges two leading, if not sole, questions for reconsideration. It is unnecessary to again discuss the questions at any length.

One of his contentions now is, that because the Act of the Legislature in question exempts all railroads with a less mileage than twenty-five miles from the operation of the Act, that the Act is thereby void and unconstitutional. As we understand the authorities, both text-books and decisions of all the courts where the question is raised and discussed, this question is held against appellant's contention. It is expressly so held by the Supreme Court of the United States in the cases of New York, etc., R. R. Co. v. New York, 165 U. S., 628, and Consolidated Coal Co. v. Illinois, 185 U. S., 203. We think it unnecessary to cite other authorities.

Appellant's other contention, in effect, is that said Act of the Legislature is unconstitutional, because it interferes with the personal liberty of the railroads and individuals and prevents them from exercising their constitutional right of making such contracts as they desire. This Act of the Legislature and no other law of this State, known to us, restricts the right or prevents anyone from qualifying himself to become a conductor by working as a brakeman for the two

years required by this Act. In fact, every person has the right to seek and obtain the employment of brakeman and thereby qualify himself for the position of conductor and there is no restrictions against anyone so qualifying himself.

We think it is now practically universally conceded by all authorities that wherever the proper prosecution of a calling or profession requires a certain amount of technical knowledge and professional skill and the lack of them may result in material damage to the public, it is a legitimate exercise of police power to prohibit anyone from engaging in such calling or work who has not previously properly qualified therefor. "The right of the State to exercise this control over skilled trades and the learned professions, with a single exception in respect to teachers and expounders of religion, has never been seriously questioned. Thus we find in every State statutes which provide for the examination of those who wish to engage in the practice of the law, of medicine and surgery, of pharmacy, and of those who desire to ply the trade of plumbing. And sometimes we find statutes which require all engineers to be examined before they are permitted to take charge of an engine. So, also, in England, *it was once made necessary for one to serve an apprenticeship before he was permitted to pursue any one of the skilled trades.* That is not now the law in the United States, *but there would be no constitutional objection to such a statute, if it were enacted."* (Italics ours.) 1 Tiedeman on State and Federal Control of Persons and Property, p. 242; 9 Ency. of U. S. Sup. Ct. Rep., pp. 520-522, and cases cited in the notes; see also 4 Ency. of U. S. Sup. Ct. Rep., p. 431, and cases there cited; Freund, Police Power, section 116 and notes; 9 Ency. of U. S. Sup. Ct. Rep., pp. 483-486, and cases cited in the notes.

It was peculiarly the province of the Legislature to require, instead of an examination to ascertain whether or not a person had such knowledge as to authorize him to fill the position of conductor, an experience by actual work for a reasonable specified period which would qualify him therefor. There is nothing in this record to show that the skill, knowledge and training received by a brakeman for two years, would not fully qualify him to take charge of and operate a train as conductor. From common knowledge we take it that this length of time of active work in the duties of a brakeman would so qualify him. It is true that some brakeman might never be of sufficient aptness and mental, and even moral, qualifications as to ever fit him for a position as conductor, but that does not affect the law.

The motion for rehearing is overruled.

*Overruled.*

[Writ of error granted to Supreme Court of the United States, May 13, 1912. Decision of said court will be noted in subsequent volume of these reports.—Reporter.]