273 U.S. 34 (1927)
DI SANTO
v.
PENNSYLVANIA.
No. 288.
Supreme Court of United States.
Argued October 27, 1926.
Decided January 3, 1927.
ERROR TO THE SUPREME COURT OF THE STATE OF PENNSYLVANIA.
Messrs. William H. Neely and John H. Neely, Jr., for the plaintiff in error.
Messrs. Philip S. Moyer and E. Le Roy Keen, with whom Mr. George W. Woodruff, Attorney General of Pennsylvania, was on the brief, for the defendant in error.
*35 MR. JUSTICE BUTLER delivered the opinion of the Court.
Plaintiff in error was indicted in the Court of Quarter Sessions of Dauphin County, Pennsylvania, for a violation of an Act of the Legislature of July 17, 1919, as amended by the Act of May 20, 1921, P.L. 997, requiring licenses to sell steamship tickets or orders for transportation to or from foreign countries. The indictment alleged that, December 14, 1921, without having obtained a license so to do, plaintiff in error held himself out as authorized to sell tickets and orders for transportation as agent of certain steamship companies, and that he engaged in the sale of such tickets. There was no controversy as to the facts; and, by direction of the court, the jury returned a verdict of guilty. Plaintiff in error, by motion in arrest of judgment, challenged the validity of the Act on the ground that it contravenes the commerce clause of the Federal Constitution. The court held the statute valid, and sentenced him to pay a fine. On appeal the Superior Court held the Act unconstitutional and reversed the judgment. The Supreme Court reversed the Superior Court and reinstated the judgment of the trial court. The case is here under § 237(a) of the Judicial Code.
The Act of 1921 provides that no person or corporation, other than a railroad or steamship company, shall engage within the State in the sale of steamship tickets or orders for transportation or shall hold himself out as authorized to sell such tickets or orders without having first procured a license. It requires every applicant to cause his application to be advertised in specified publications, to furnish proof that he is of good moral character and fit to conduct the business, to give a list of the steamship lines, not less than three, for which he is agent, and to file a bond in the penal sum of $1,000 conditioned that he will account to all interested persons for moneys received for tickets and orders and that he will not be guilty *36 of any fraud or misrepresentation to purchasers. The license is granted on approval of the Commissioner of Banking and payment of a fee of $50.00, and may be renewed on payment of a like fee annually. The license may be revoked for fraud, misrepresentation, or failure to account. Any person carrying on this business without license is declared guilty of a misdemeanor and liable to fine or imprisonment or both. The state Supreme Court declared that the Act is one to prevent fraud; and held that it does not require an agent or servant of the steamship companies to have a license, but that plaintiff is not such an agent, and that he occupies a position in the nature of an independent contractor, and is required to obtain a license.
Plaintiff represented four steamship companies operating steamships between the United States and Europe. Each of them gave him a certificate authorizing him to sell, at a specified place in Harrisburg, tickets and orders for transportation entitling persons therein named to passage on such steamships; and required the certificate to be posted in his office. This is in accordance with the Pennsylvania Act of 1863, P.L. 582, regulating the display of certificates by steamship agents; and a copy of that Act was printed on the certificate. The companies furnished plaintiff in error books of tickets having stubs on which to make record of tickets sold, advertising matter to be used by him, schedules of sailings, notices of cancelations of sailings, and information as to the immigration and customs services; and they authorized him to collect money for tickets sold. He usually received 25 per cent. of the price when applications were made for the tickets. He gave each company a bond to account; and transmitted immediately to his respective principals the amounts received by him.
The soliciting of passengers and the sale of steamship tickets and orders for passage between the United States *37 and Europe constitute a well-recognized part of foreign commerce. See Davis v. Farmers Co-operative Co., 262 U.S. 312, 315. A state statute which by its necessary operation directly interferes with or burdens foreign commerce is a prohibited regulation and invalid, regardless of the purpose with which it was passed. Shafer v. Farmers Grain Co., 268 U.S. 189, 199, and cases cited. Such legislation cannot be sustained as an exertion of the police power of the State to prevent possible fraud. Real Silk Mills v. Portland, 268 U.S. 325, 336. The Congress has complete and paramount authority to regulate foreign commerce and, by appropriate measures, to protect the public against the frauds of those who sell these tickets and orders. The sales here in question are related to foreign commerce as directly as are sales made in ticket offices maintained by the carriers and operated by their servants and employees. The license fee and other things imposed by the Act on plaintiff in error, who initiates for his principals a transaction in foreign commerce, constitute a direct burden on that commerce. This case is controlled by Texas Transport Co. v. New Orleans, 264 U.S. 150, and McCall v. California, 136 U.S. 104.
Judgment reversed.
MR. JUSTICE BRANDEIS, with whom MR. JUSTICE HOLMES concurs, dissenting.
The statute is an exertion of the police power of the State. Its evident purpose is to prevent a particular species of fraud and imposition found to have been practiced in Pennsylvania upon persons of small means, unfamiliar with our language and institutions.[1] Much of the *38 immigration into the United States is effected by arrangements made here for remittance of the means of travel. The individual immigrant is often an advance guard. After gaining a foothold here, he has his wife and children, aged parents, brothers, sisters or other relatives follow. To this end he remits steamship tickets or orders for transportation. The purchase of the tickets involves trust in the dealer. This is so not only because of the nature of the transaction, but also because a purchaser when unable to pay the whole price at one time makes successive deposits on account, the ticket or order not being delivered until full payment is made. The facilities for remitting both cash and steamship tickets are commonly furnished by private bankers of the same nationality as the immigrant. It was natural that the supervision of persons engaged in the business of supplying steamship tickets should be committed by the statute to the Commissioner of Banking.[2]
Although the purchase made is of an ocean steamship ticket, the transaction regulated is wholly intrastate  as much so as if the purchase were of local real estate or of local theatre tickets. There is no purpose on the part of *39 the State to regulate foreign commerce. The statute is not an obstruction to foreign commerce. It does not discriminate against foreign commerce. It places no direct burden upon such commerce. It does not affect the commerce except indirectly. Congress could, of course, deal with the subject, because it is connected with foreign commerce. But it has not done so. Nor has it legislated on any allied subject. Thus, there can be no contention that Congress has occupied the field. And obviously, also, this is not a case in which the silence of Congress can be interpreted as a prohibition of state action  as a declaration that in the sale of ocean steamship tickets fraud may be practiced without let or hindrance. If Pennsylvania must submit to seeing its citizens defrauded, it is not because Congress has so willed, but because the Constitution so commands. I cannot believe that it does.
Unlike the ordinance considered in Texas Transport Co. v. New Orleans, 264 U.S. 150, this statute is not a revenue measure. The license fee is small. The whole of the proceeds is required to defray the expense of supervising the business. Unlike the measure considered in Real Silk Mills v. Portland, 268 U.S. 325, 336, this statute is not an instrument of discrimination against interstate or foreign commerce. Unlike that considered in Shafer v. Farmers Grain Co., 268 U.S. 189, 199, it does not affect the price of articles moving in interstate commerce. The licensing and supervision of dealers in steamship tickets is in essence an inspection law. Compare Turner v. Maryland, 107 U.S. 38.
The fact that the sale of the ticket is made as a part of a transaction in foreign or interstate commerce does not preclude application of state inspection laws, where, as here Congress has not entered the field, and the state regulation neither obstructs, discriminates against, or directly burdens the commerce. Patapsco Guano Co. v. Board of Agriculture, 171 U.S. 345; Diamond Glue Co. v. *40 United States Glue Co., 187 U.S. 611; McLean v. Denver & Rio Grande R.R. Co., 203 U.S. 38, 54; Red "C" Oil Mfg. Co. v. Board of Agriculture, 222 U.S. 380; Savage v. Jones, 225 U.S. 501; Sligh v. Kirkwood, 237 U.S. 52, 62; Merchants Exchange v. Missouri, 248 U.S. 365; Pure Oil Co. v. Minnesota, 248 U.S. 158; Hebe Co. v. Shaw, 248 U.S. 297; Weigle v. Curtice Brothers Co., 248 U.S. 285; Armour & Co. v. North Dakota, 240 U.S. 510; Corn Products Refining Co. v. Eddy, 249 U.S. 427; Crescent Oil Co. v. Mississippi, 257 U.S. 129. To require that the dealer in tickets be licensed in order to guard against fraud in the local sale of tickets certainly affects interstate or foreign commerce less directly than to provide a test of the locomotive engineer's skill, Smith v. Alabama, 124 U.S. 465; or eyesight, Nashville, Chattanooga, & St. Louis Ry. v. Alabama, 128 U.S. 96; or requiring that passenger cars be heated and guard posts placed on bridges, N.Y., N.H., & H.R.R. Co. v. New York, 165 U.S. 628; or requiring every railway to cause three of its regular passenger trains to stop each way daily at every village containing over three thousand inhabitants. Lake Shore & Michigan Southern R.R. Co. v. Ohio, 173 U.S. 285; or to require trains to limit within a city their speed to six miles an hour, Erb v. Morasch, 177 U.S. 584; or to establish a standard for the locomotive headlight, Atlantic Coast Line R.R. v. Georgia, 234 U.S. 280; or to prescribe "full crews," Chicago, Rock Island & Pacific Ry. v. Arkansas, 219 U.S. 453; St. Louis, Iron Mountain and Southern Ry. Co. v. Arkansas, 240 U.S. 518; or to compel the providing of separate coaches for whites and colored persons, South Covington, etc., Ry. v. Kentucky, 252 U.S. 399; or to compel a railroad to eliminate grade crossings, although the expense involved may imperil its solvency, Erie R.R. Co. v. Public Utility Commissioners, 254 U.S. 394, 409-412  state requirements sustained by this Court. See also Engel v. O'Malley, 219 U.S. 128, 138.
*41 It is said that McCall v. California, 136 U.S. 104, requires that the Pennsylvania statute be held void. McCall was an employee of the railroad, not an independent solicitor or dealer. Di Santo, as the state court found the facts, was not an employee of a steamship company, nor an agent authorized to act for one; and it ruled, as a matter of statutory construction, that, if he had been such, he would not have been required by the statute to be licensed. It found him to be an independent dealer or contractor, "a free lance" authorized by the several steamship companies "to sell tickets or orders entitling the persons therein named to passage upon steamers," but "with no obligation to any particular company," except to remit the net amount payable by him to the company for a ticket or order sold. Moreover, the fee imposed by the San Francisco ordinance was an occupation tax, not an inspection fee. Here, the Pennsylvania court found that the statute did not produce any revenue.
On the facts, the McCall case is distinguishable from that at bar. If, because of its reasoning, it is thought not to be distinguishable, it should be disregarded. The doctrine of stare decisis presents no obstacle. Disregard of the McCall case would not involve unsettlement of any constitutional principle or of any rule of law, properly so called. It would involve merely refusal to repeat an error once made in applying a rule of law  an error which has already proved misleading as a precedent. While the question whether a particular statute has the effect of burdening interstate or foreign commerce directly presents always a question of law, the determination upon which the validity or invalidity of the statute depends, is largely or wholly one of fact. The rule of law which governs the McCall case and the one at bar is the same. It is that a State may not obstruct, discriminate against, or directly burden interstate or foreign commerce. The question at bar is whether, as applied to existing facts, *42 this particular statute is a direct burden. The decision as to state regulations of this character, depends often, as was said in Southern Railway v. King, 217 U.S. 524, 533, "upon their effect upon interstate commerce." In that case, the Georgia blow post law was held constitutional, as not being a direct burden. In Seaboard Air Line Ry. v. Blackwell, 244 U.S. 310, the same statute was held, on other facts, to be void, because shown to be a direct burden. Each case required the decision of the question of law. Each involved merely an appreciation of the facts. Neither involved the declaration of a rule of law.
It is usually more important that a rule of law be settled, than that it be settled right. Even where the error in declaring the rule is a matter of serious concern, it is ordinarily better to seek correction by legislation. Often this is true although the question is a constitutional one. The human experience embodied in the doctrine of stare decisis teaches us, also, that often it is better to follow a precedent, although it does not involve the declaration of a rule. This is usually true so far as concerns a particular statute whether the error was made in construing it or in passing upon its validity. But the doctrine of stare decisis does not command that we err again when we have occasion to pass upon a different statute. In the search for truth through the slow process of inclusion and exclusion, involving trial and error, it behooves us to reject, as guides, the decisions upon such questions which prove to have been mistaken. This course seems to me imperative when, as here, the decision to be made involves the delicate adjustment of conflicting claims of the Federal Government and the States to regulate commerce.[3] *43 The many cases on the Commerce Clause in which this Court has overruled or explained away its earlier decisions show that the wisdom of this course has been heretofore recognized.[4] In the case at bar, also, the logic of words should yield to the logic of realities.
MR. JUSTICE STONE, dissenting.
I agree with all that MR. JUSTICE BRANDEIS has said, but I would add a word with respect to one phase of the matter which seems to me of some importance. We are not here concerned with a question of taxation to which other considerations may apply, but with state regulation of what may be conceded to be an instrumentality of foreign commerce. As this Court has many times decided, the purpose of the commerce clause was not to preclude all state regulation of commerce crossing state *44 lines, but to prevent discrimination and the erection of barriers or obstacles to the free flow of commerce, interstate or foreign.
The recognition of the power of the states to regulate commerce within certain limits is a recognition that there are matters of local concern which may properly be subject to state regulation and which, because of their local character, as well as their number and diversity, can never be adequately dealt with by Congress. Such regulation, so long as it does not impede the free flow of commerce, may properly be and for the most part has been left to the states by the decisions of this Court.
In this case the traditional test of the limit of state action by inquiring whether the interference with commerce is direct or indirect seems to me too mechanical, too uncertain in its application, and too remote from actualities, to be of value. In thus making use of the expressions, "direct" and "indirect interference" with commerce, we are doing little more than using labels to describe a result rather than any trustworthy formula by which it is reached.
It is difficult to say that such permitted interferences as those enumerated in MR. JUSTICE BRANDEIS' opinion are less direct than the interference prohibited here. But it seems clear that those interferences not deemed forbidden are to be sustained, not because the effect on commerce is nominally indirect, but because a consideration of all the facts and circumstances, such as the nature of the regulation, its function, the character of the business involved and the actual effect on the flow of commerce, lead to the conclusion that the regulation concerns interests peculiarly local and does not infringe the national interest in maintaining the freedom of commerce across state lines.
I am not persuaded that the regulation here is more than local in character or that it interposes any barrier *45 to commerce. Until Congress undertakes the protection of local communities from the dishonesty of the sellers of steamship tickets, it would seem that there is no adequate ground for holding that the regulation here involved is a prohibited interference with commerce.
MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.
NOTES
[1] A similar statute had been enacted in New York, with the approval of Governor (afterwards Mr. Justice) Charles E. Hughes. Laws of New York 1910, c. 349, amended by Laws of New York 1911, c. 578. And similar laws have been enacted also in other States. Indiana, Burns' Ann. Stat. 1926, §§ 4681-4685; Michigan, Cahill's Comp. Laws Mich. Ann. Supp. 1922, § 7164(1)-7164(9); Ohio Gen. Code, §§ 710-183-710-187.
[2] In 1910 there were 410 of such banking businesses in Pennsylvania. Report of Immigration Commission, vol. 37, p. 209. The Commission found, also, that of the businesses (in Pennsylvania and elsewhere) examined by it, "94 per cent. of the concerns engaged in the business of selling steamship tickets were at the same time engaged in the business of immigrant banking. This shows that the relation between the two is so close as to warrant the classification of them as inter-dependent. . .. Having made the start, it is natural that he should continue to leave with the agent for safe-keeping his weekly or monthly surplus, so that he may accumulate a sufficient amount for another remittance or for the purpose of buying a steamship ticket to bring his family to this country or for his own return to Europe." Ibid., p. 212.
[3] See "The Compact Clause of the Constitution.  A Study in Interstate Adjustments," by Felix Frankfurter and James M. Landis, 34 Yale Law Journal 685, 720-725, and cases there cited; "Judicial Determination of Questions of Fact Affecting the Constitutional Validity of Legislative Action," by Henry Wolf Bikle, 38 Harvard Law Review 6.
[4] See Pierce v. New Hampshire, 5 How. 504, 554, overruled by Leisy v. Hardin, 135 U.S. 100, 118; Osborne v. Mobile, 16 Wall. 479, overruled by Leloup v. Port of Mobile, 127 U.S. 640, 647-648. See State Tax on Railway Gross Receipts, 15 Wall. 284, qualified by Philadelphia S.S. Co. v. Pennsylvania, 122 U.S. 326, 342; Peik v. C. & N.W. Ry. Co., 94 U.S. 164, qualified by Wabash, St. L. & Pac. Ry. Co. v. Illinois, 118 U.S. 557; Pullman's Palace Car Co. v. Pennsylvania, 141 U.S. 18, qualified in Union Tank Line Co. v. Wright, 249 U.S. 275; Maine v. Grand Trunk Ry. Co., 142 U.S. 217, qualified in Galveston, Harrisburg & San Antonio Ry. Co. v. Texas, 210 U.S. 217; Texas Co. v. Brown, 258 U.S. 466; Bowman v. Continental Oil Co., 256 U.S. 642; Askren v. Continental Oil Co., 252 U.S. 444, and Standard Oil Co. v. Graves, 249 U.S. 389, all qualified in Sonneborn Bros. v. Cureton, 262 U.S. 506. Compare the discussion of City of New York v. Miln, 11 Pet. 101, in Passenger Cases, 7 How. 283; that of Ficklen v. Shelby County Taxing District, 145 U.S. 1, in Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 296, and in Texas Transport Co. v. New Orleans, 264 U.S. 150; that of Gulf, Colorado & Santa Fe Ry. Co. v. Texas, 204 U.S. 403, in Baltimore & Ohio Southwestern R.R. Co. v. Settle, 260 U.S. 166, 173; that of Baltic Mining Co. v. Massachusetts, 231 U.S. 68, in Alpha Cement Co. v. Massachusetts, 268 U.S. 203.