**AMERICAN APPAREL MANUFAC-
TURERS ASSOCIATION,
Plaintiff,**

**v.**

**Honorable Francis W. SARGENT, Governor, Commonwealth of Massachusetts, et al., Defendants.**

**Civ. A. No. 73–3937–M.**

United States District Court,
D. Massachusetts.

Feb. 6, 1974.

William I. Althen, George D. Webster, and Arthur L. Herold, Webster & Kilcullen, Washington, D. C., for plaintiff.

Kenneth Behar, Asst. Atty. Gen., Commonwealth of Massachusetts, Boston, Mass., for defendants.

Before ALDRICH, Senior Circuit Judge, and GARRITY and MURRAY, District Judges.

## OPINION

ALDRICH, Senior Circuit Judge.

Stated briefly, American Apparel Manufacturers . Association, a non-profit trade association, brings this action against the Massachusetts governor and others to have declared unconstitutional Chapter 649, Massachusetts Acts of 1973, an act which establishes a certain flammability standard known, federally, as DOC FF 3–71, already made applicable by federal action,[1] to children's sleepwear sizes 0–6X, to children's sleepwear sizes 7–14 when sold or offered for sale within the Commonwealth, despite the existence of a less stringent federal standard for sizes 7–14.[2] An injunction being sought, this three-judge district court was constituted. 28 U.S.C. § 2281.

We requested plaintiff to show why we have jurisdiction.[3]

Plaintiff asserts two grounds of unconstitutionality: violation of the Supremacy Clause in that the federal act has preempted the entire field, and violation of the Commerce Clause by an undue interference with interstate commerce. Since Swift & Co. v. Wickham, 1965, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed. 2d 194, it is clear that plaintiff's first ground affords us no jurisdiction. We believe plaintiff mistaken in thinking that making this claim at least serves to compensate for any weakness in the second. At best the shoe is on the other foot; if a claim "not insubstantial on [its] face" is advanced under the Commerce Clause, it will serve to establish pendent jurisdiction for determination of the question of federal preemption, Brotherhood of Locomotive Engineers v. Chicago, Rock Is. & Pac. R. Co., 1966, 382 U.S. 423, 428, 86 S.Ct. 594, 15 L.Ed. 2d 501, but if the Commerce Clause claim is without substance, there is no occasion to occupy a three-judge court with litigation the maximum scope of which is only a one-judge question. Thus in Swift & Co. v. Wickham, ante, an insubstantial Commerce Clause claim was made, and rejected. 382 U.S. at 114–115, 86 S.Ct. 258. Although we have the option of remanding the preemption question to the single judge forthwith, see Rosado v. Wyman, 1970, 397 U.S. 397, 403, 90 S.Ct. 1207, 25 L.Ed.2d 442, we prefer to go to the merits, since we consider the Commerce Clause claim entirely insubstantial on its face.[4]

As a basis for claiming undue interference with interstate commerce

1. Children's Sleepwear, Standard for the Flammability of Children's Sleepwear [DOC FF 3–71], 36 Fed.Reg. 14062 (July 29, 1971), promulgated by the Secretary of Commerce under authority granted in the Flammable Fabrics Act, 15 U.S.C. § 1193 (as amended 1967).

2. The Flammable Fabrics Act, 15 U.S.C. §§ 1191–1204, provides a minimum flammability standard across the board, denominated CS 191–53, for all clothing fabric unless the Sec-

retary of Commerce, now the Consumer Product Safety Commissioner, promulgates a more stringent standard. The Secretary has so far done so only with respect to children's sleepwear sizes 0–6X.

3. Another in limine question is that of plaintiff's standing. Since we find no three-judge court jurisdiction, we leave that question to the single district judge.

4. Although the question is not before us, we note the possible insubstantiality of the pre-

plaintiff alleges, by pleading, by affidavits, and by an offer of proof,[5] basically the following. There are no Massachusetts manufacturers of children's sleepwear, sizes 0–14, so that any sold in Massachusetts must be transported in interstate commerce. It is not practical to meet the DOC FF 3–71 standard by treating the garments after they have been manufactured. For manufacturers producing on a large scale to have to make special goods for Massachusetts[6] would increase costs, possibly as much as $33\frac{1}{3}\%$.[7] Plaintiff further offers to show that a shortage of materials will make immediate full compliance difficult. This offer is so general, and so inconclusive, it appearing that many manufacturers are already meeting the Massachusetts requirement, that we can attach no substantial significance to it. Finally, plaintiff says that the manufacture of children's sleepwear is a national matter, and that if every state is to be permitted to establish individual requirements the business will be substantially interfered with. We recognize the force of this contention to the extent that it is not answered by saying that the requirements of only two states,[8] are de minimis. If one state can make special requirements, so can all. But that does not necessarily make such requirements

invalid. *See* Chemical Specialities Mfrs. Ass'n, Inc. v. Lowery, 2 Cir., 1971, 452 F.2d 431, 437.

■ To these offers defendants answer with a showing that the special risks to children from flammable sleepwear, while perhaps diminishing after age six, remain high, and that such burns are exceedingly serious, both physically and financially, often placing heavy long term burdens upon the victim, the parents, and the state. How far this proof would stand up we need not determine. It is enough to say that we judicially notice that this is a proper police power matter. The only question must be, for present purposes, whether there has been a substantial showing of an intolerable burden upon interstate commerce.

■ In this circumstance we must regard as apt a quotation from Bibb v. Navajo Freight Lines, Inc., 1959, 359 U.S. 520 at 524, 79 S.Ct. 962 at 964, 3 L.Ed.2d 1003.

"These safety measures carry a strong presumption of validity when challenged in court. If there are alternative ways of solving a problem, we do not sit to determine which of them is best suited to achieve a valid state objective. Policy decisions are for the

emption claim as well. Section 16 of the Act, added in 1967, states that the Act is intended to supersede state laws inconsistent with its provisions. 15 U.S.C. § 1203. However, section 10, which remained in the Act after the 1967 amendment, stated that the Act's provisions "shall be held to be in addition to, and not in substitution for or limitation of, the provisions of any other law." 15 U.S.C. § 1199. On this basis there would appear to be no Congressional intent to foreclose the application of a state standard concededly stricter than the present federal provision.

5. For purposes of determining whether a substantial constitutional claim exists, we are required to look to the allegations of the complaint to determine if they are "obviously without merit" or completely foreclosed by previous Supreme Court decisions. *E. g.*, Goosby v. Osser, 1973, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36; Ex parte Poresky, 1933, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152.

We therefore are using the supporting affidavits and offers of proof only as matter explaining the nature of the complaint where it may be ambiguous or unspecific, and are not using it as evidence going to the merits. To the extent that defendants' affidavits and offers contradict matters in the complaint or plaintiff's other materials, we do not consider them on this issue of substantiality.

6. And the State of Washington, which has adopted the same requirement as Massachusetts. Flammable Fabrics Act, Wash. Laws 1973, Extra Sess., Ch. 211 (July 16, 1973).

7. As against this defendants claim that since this cost increase will appy to all manufacturers alike, it is not a burden on the manufacturer, but one that will be passed on to the consumer. This is not a sufficiently obvious response for us to accept it for present purposes.

8. See n. 6, ante.

state legislature, absent federal entry into the field. Unless we can conclude on the whole record that 'the total effect of the law as a safety measure in reducing accidents and casualties is so slight or problematical as not to outweigh the national interest in keeping interstate commerce free from interferences which seriously impede it' (Southern Pacific Co. v. State of Arizona, 325 U.S. [761], at pages 775–776 [65 S.Ct. 1515, at page 1523, 89 L.Ed. 1915].) we must uphold the statute." [footnote omitted.]

It seems clear that in the weighing that this calls for, state police power, if the purpose is good,[9] is to be overcome only by an exceptional burden upon interstate commerce. Cost, assuming no discrimination, seems relatively unimportant. *Cf.* Huron Portland Cement Co. v. City of Detroit, 1960, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852; Sproles v. Binford, 1932, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167; New York, N. H. & H. RR Co. v. New York, 1897, 165 U.S. 628, 17 S.Ct. 418, 41 L.Ed. 853. Physical inconvenience, also, as the extended analysis the Court felt called upon to make in *Bibb* before concluding the burden excessive indicates, becomes important only when it must be considered in terms of impracticality. *See also* New York, N. H. & H. RR Co. v. New York, ante. We see a total difference between *Bibb's* requiring different mudguards on a truck as it travels from state to state, and in requiring a manufacturer to make different individual piece goods for sale in one state and another. The only apparent consequence of the latter is to diminish the efficiency of mass production. In *Bibb*, as the Court pointed out (both in *Bibb* and in Huron Portland Cement Co. v. City of Detroit, ante, 362 U.S. at 448, 80 S.Ct. 813) compliance, as a practical matter, was impossible. A requirement as to the material to be sold within Massachusetts does not interfere with the production or delivery of goods to other states, and meeting the Massachusetts standard for Massachusetts-bound goods will not prevent manufacturers from meeting different standards for other states should they adopt them. *See also* n. 6, ante.

Plaintiff cites no case that comes even close to offering it assistance. On the other hand, we note the following cases where the court, finding no preemption, did not even suggest the Commerce Clause. Rice v. Sante Fe Elevator Corp., 1947, 331 U.S. 218, 236–238, 67 S.Ct. 1146, 91 L.Ed. 1447; Chrysler Corp. v. Tofany, 2 Cir., 1969, 419 F.2d 499; Chrysler Corp. v. Rhodes, 1 Cir., 1969, 416 F.2d 319; *cf.* Raymond v. Riegel Textile Corp., 1 Cir., 1973, 484 F.2d 1025. We must conclude that plaintiff's Commerce Clause contention lacks any arguable substance.

An order will enter remanding the case to the single judge and dissolving this court.

---

9. Plaintiff has not alleged, and there is no indication, that the Massachusetts statute as a safety measure is "slight and problematical."