## CITY OF WINK et al. v. WINK GAS CO.

### No. 3646.

Court of Civil Appeals of Texas. El Paso.
March 24, 1938.

Rehearing Denied April 21, 1938.

Hill D. Hudson, of Pecos, and A. T. Folsom, of Wink, for appellants.

L. A. Dale, of Pecos, and Willis L. Lea, Jr., and Scott Hughes, both of Dallas, for appellee.

NEALON, Chief Justice.

October 7, 1936, the Board of Commissioners of the City of Wink, a city incorporated under the general laws of the state, passed an ordinance, which was approved on the same day, prescribing the rates to be charged for natural gas in said city. A schedule was adopted by which the rate per thousand cubic feet diminished with increased consumption. The ordinance contained other regulatory provisions. November 11, 1936, said ordinance was amended in certain particulars which it is not necessary to mention. November 5, 1936, an ordinance was passed, with an emergency clause attached, and approved by the mayor, which contained the following provisions:

"Section 1. That from and after the passage, approval and publication of this ordinance it shall be unlawful for any person, firm, corporation, or association engaged in the business of the distribution and sale of natural gas in the City of Wink, Texas, to demand, insist upon, or require by contract, stipulation, rule, or otherwise, the setting of more than one meter to measure the gas furnished to one consumer on property owned or leased by him at one location, (i. e. on the same or adjacent lots) unless more than one meter is requested by such property owner or lessee; and if for any reason more than one meter shall be required in violation of the terms of this section, the combined readings of all such meters shall be construed as the reading of a single meter.

"Section 2. Every person, firm, corporation, or association, who shall wilfully violate any of the terms of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction shall be punished by fine in any sum not exceeding ($100) One Hundred Dollars, and each day of such violation shall constitute a separate offense."

· December 24, 1936, Wink Gas Company, plaintiff in the trial court and appellee in this court, filed suit against the City of Wink, its mayor and its city commissioners, seeking to enjoin said city and its officers from enforcing the ordinance passed and approved November 5, 1936. Plaintiff alleged that the ordinance was void, unlawful, and arbitrary as to plaintiff, for the following reasons: (a) That it would force plaintiff to unlawfully discriminate between its customers contrary to the provisions of articles 1438, 1505 and 6057 of the Revised Civil Statutes, and of the provisions of article 1630 of the Penal Code; (b) that it would deprive plaintiff of large sums of revenue by requiring plaintiff to sell and distribute gas to all who have and maintain more than one house on one meter for a lesser price and at a lesser revenue than would be received if sale and distribution were made through a single meter for each separate use and establishment, thereby depriving it of property without due process of law in violation of article 14, § 1, of the Amendments to the Constitution of the United States, and of sections 3, 17, and 19, article 1 of the Constitution of Texas; (c) that it would apparently destroy the obligations of various contracts between plaintiff and customers, which, it alleged, were made prior to the incorporation of Wink as a city; (d) that it would force plaintiff to violate article 1630 of the Penal Code and articles 1438, 1505, and 6057 of the Re-

976

vised Civil Statutes. Then followed the usual allegations of irreparable injury and inadequacy of legal remedies.

Upon a hearing at a special called session, held on the 6th day of May, 1937, the court entered judgment reciting that the ordinance was unreasonable and not within the power of the City of Wink; that it would require discrimination between the customers of the plaintiff contrary to the statutes of the state; and that its enforcement with its penal provisions "infringes upon and materially affects the property rights of plaintiff to its injury and diminution of its revenue," and perpetually enjoining the city and its representatives from enforcing or attempting to enforce said ordinance, and from requiring or attempting to require its observation in whole or in part. From this judgment defendants appealed.

### Opinion.

The City of Wink, by virtue of article 1119, R.C.S., has power to regulate by ordinance the rates to be charged by. gas companies and other public utilities using the city's streets and public grounds, "and also to prescribe rules and regulations under which such commodities shall be furnished, and service rendered, and to fix penalties to enforce such charges, rules and regulations." The power of the city to regulate rates to be charged by public utilities 'and to prescribe rules and regulations under which such commodities shall be furnished is governmental. It may not be bartered away. The city may not by contract impair or limit this right. The power was delegated by the state. The city, as the agent of the state, is under the duty of exercising the power when its exercise is necessary. City of San Antonio v. San Antonio Irr. Co., 118 Tex. 154, 12 S.W.2d 546; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143; Texas Gas Utilities Co. v. City of Uvalde, Tex.Civ.App., 77 S.W.2d 750. From the foregoing it necessarily follows that no contract between appellee and its customers, whether made prior to the incorporation of the city or thereafter, can destroy or limit the city's right to regulate rates, and to prescribe the rules and regulations referred to in article 1119. That right in the state existed prior to the making of the contracts relied upon by plaintiff. Knowledge of this power of the state and of the right of the state to delegate this power to any municipal corporation

that might thereafter be formed with jurisdiction over the area involved is imputed to the contracting parties. Therefore, the objection that the necessary effect of the ordinance is to impair the obligation of contract between appellee and its customers is not sound, and does not afford ground for the relief sought. As said by the Commission of Appeals, with the approval of the Supreme Court, in Bowers v. City of Taylor, 16 S.W.2d 520, 522: "In New York & N. E. R. R. Co. v. Bristol, 151 U.S. 556, 14 S.Ct. 437, 38 L.Ed. 269, a similar rule was announced by the court in the use of. this language: 'The governmental power of self-protection cannot be contracted away, nor can the exercise of rights granted, nor the use of property, be withdrawn from the implied liability to governmental regulations in particulars essential to the preservation of the community from injury.' * * * The general rule deducible from the authorities is that the legislative power vested in municipal bodies is something which cannot be bartered away in such manner as to disable them ·from the performance of their public functions. 2 Beach on Pub. Corp. §§ 1068 and 1208; Indianapolis v. Consumers' Gas Co., 140 Ind. 107, 39 N.E. 433, 27 L.R.A. 514, 49 Am.St.Rep. 183; Davis v. Mayor, etc., of City of New York, 14 N.Y. 506, 67 Am.Dec. 186; Detroit v. Ft. Wayne & Elmwood Ry. Co., 90 Mich. 646, 51 N.W. 688; Chicago, Burlington & Quincy Ry. Co. v. Quincy, 139 Ill. 355, 28 N.E. 1069; Roanoke Gas Co. v. Roanoke, 88 Va. 810, 14 S.E. 665; Louisville City Ry. Co. v. Louisville, 8 Bush (Ky.) 415; Hood v. Lynn, 1 Allen (Mass.) 103; Backus v. Lebanon, 11 N.H. 19, 35 Am.Dec. 466; Brimmer v. Boston, 102 Mass. 19; O'Connor v. Pittsburgh, 18 Pa. 187."

The principle, as applied to federal legislation, was stated by the Supreme Court in the famous Gold Clause Cases, Norman v. Baltimore & O. R. R. Co., 294 U.S. 240, 55 S.Ct. 407, at page 416, 79 L.Ed. 885, at page 902, 95 A.L.R. 1352, and other cases, Nortz v. U. S., 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907, 95 A.L.R. 1346; Perry v. U. S., 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912, 95 A.L.R. 1335: "Contracts, however express, cannot fetter the constitutional authority of the Congress. Contracts may create rights of property, but, when contracts deal with a subject-matter which lies within the control of the Congress, they have a congenital infirmity. Parties cannot remove their transactions from the

reach of dominant constitutional power by making contracts about them. See Hudson Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 52 L.Ed. 828, 832, 14 Ann.Cas. 560."

■ If, as a result of diminished revenues under the scale of charges ordained by the City Commission, injustice is done to appellee, its right of appeal to the Railroad Commission and thereafter to any district court of Travis county exists under articles 6058 and 6059, Revised Civil Statutes. State v. Public Service Corporation of Texas, Tex.Civ.App., 88 S.W.2d 627, writ refused; United Gas Public Service Co. v. State of Texas, Tex.Civ. App., 89 S.W.2d 1094, affirmed, 58 S.Ct. 483, 82 L.Ed. ——; Texas Gas Utilities Co. v. City of Uvalde, supra.

■ Nor does the ordinance require unlawful discrimination. The rate ordinance, which is not under attack, prescribed, as has been said, decreasing rates in behalf of individual consumers to accompany increased consumption upon their part. Such rates, of course, must be equal as to all in identical classes. It is the city's prerogative to define the classes. The classification must be reasonable. The classification is, in effect, fixed by the original ordinance which grants to quantity consumers diminishing rates in proportion to increased consumption. The ordinance enacted has for its purpose the protection of the large consumers in their rights under the rate ordinance. It attempts to afford that protection by prescribing that all gas consumed by a single owner upon a single location shall be measured through a single meter.

■ Since the power sought to be exercised is one derived from a general grant, courts have jurisdiction to inquire into the reasonableness of the mode by which it is proposed to be exercised. The ordinance is presumed to be reasonable. One attacking it has the burden of proving that it is unreasonable. City of Austin v. Austin Cemetery Ass'n, 87 Tex. 330, 28 S.W. 528, 47 Am.St.Rep. 114. Where possession of the power is established, a generous measure of its exercise will be permitted to the end that it may effectuate its purpose. West v. City of Waco, 116 Tex. 472, 294 S.W. 832. If there is a reasonable doubt as to its reasonableness, the ordinance must be sustained. If the question of reasonableness is seriously debatable, the opinion of the City Commission,

not that of the courts, must prevail. Ex parte Wilchar, 102 Tex.Cr.R. 549, 278 S.W. 850; Miks v. Leath, Tex.Civ.App., 26 S.W.2d 726.

Much evidence was introduced to prove that under the situation existing at Wink the ordinance was unreasonable. It related in largest measure to the situation of defendant Owenby and his insistence, prior to the enactment of the ordinance, upon having numerous apartments and cabins served through a single meter. It does not negative the existence of tourist camps, now established institutions in the smaller as well as in the larger cities for the care of travelers, nor does it negative the existence of hotels, boarding houses, and lodging houses, which furnish heat and bathing and cooking facilities as a part of their service, and not by way of sale as separate commodities. It is probable, if not certain, that many of the travelers who may become transient guests of these institutions will desire, and, perhaps, have pressing necessity for the use of fuel gas. At times it is not only conceivable, but more than probable, that facilities for heating water and food will be necessary for the health of infants traveling with their parents and for the comfort and well-being of the adults. It is not unreasonable to anticipate that many of these travelers will remain but a few hours, or at most a few days, and desire facilities for cooking and for heating water for bathing. It is not unlikely that the operation of the trailer camps, the present-day prototypes of the wagon yard of years gone by, will make necessary the supplying of the same or similar comforts to trailer travelers. The public welfare is best subserved by providing them with these facilities; and an appropriate, and perhaps the most practical, means of doing so, is through the proprietors of tourist camps who will furnish them as part of the service without making separate charges therefor. We say it is the most practical way, for, clearly, it would be inconvenient, if not impossible, to install and take readings of meters and make the necessary records for these transient guests whose sojourn is limited to one day or a few days. Even if the tenancy or the relation of host and guest exists for several weeks, it is a legitimate function of the landlord to supply this service, just as it is for the proprietors of hotels to supply it to their guests. In fact, one necessary effect of the ordinance is to protect proprietors of

hotels, boarding houses, and lodging houses in this practice. The contention of appellee carried to its logical conclusion would enable the utility company to require the installation of a meter in each separate room in a lodging house. The system required is not without compensation to the gas company, for under it ordinarily it will secure solvent consumers, thus making delinquency in payment less likely; and it will reduce the expense of furnishing service by calling for smaller capital investment for meters, and rendering necessary smaller expense for service in the matter of keeping accounts, sending out statements, making collections, and performing other tasks incident to a business of this character.

■ The objection that enforcement of the ordinance would countenance submetering or the redelivery of gas on a measured basis is, we think, not well taken. We are treating of the ordinance as it is written. It does not penalize the refusal to set only a single meter to measure gas furnished a competing utility, whether conducted by a person, a firm, or a corporation. Its protective provisions are for the benefit of consumers. And one who sells gas as such, as distinguished from one who merely furnishes fuel or heat as a part of the service to tenant or guest, is not protected by its provisions.

■ It is argued that the ordinance is unreasonable because it makes for uncertainty in the amount of appellee's revenues, and in its plans for future production. Without debating whether this is a correct forecast of what will be the result of its enforcement or not, we will but say that we have the highest authority for holding that possible inconvenience in complying with legislation does not render the legislation invalid. New York, N. H. & H. Ry. Co. v. New York, 165 U.S. 628, 17 S.Ct. 418, 41 L.Ed. 853.

■ Nor does the use of the phrase "adjacent lots," instead of "adjoining lots" or "bordering lots," render the ordinance invalid. The ordinance must be construed reasonably, and if by one construction it will be valid and by another void, the courts will, if possible, adopt the former construction. Dillon on Mun. Corp., 5th Ed., 646. "Adjacent" does not at all times mean "adjoining" or "abutting," but it is many times so used, and the purposes of its use are to be known by the context.

Wormley v. Wright County Supervisors, 108 Iowa, 232, 78 N.W. 824. See, also, Clapton v. Taylor, 49 Mo.App. 117; Municipality No. 2 v. White, 9 La.Ann. 446; Miller v. Cabell, 81 Ky. 178; City of New York v. Hart, 16 Hun, N.Y., 380; Tudor v. Chicago R. R. Co., Ill., 27 N.E. 915; In re Sadler, 142 Pa. 511, 21 A. 978; Nomath Hotel Co. v. Kansas City Gas Co., 204 Mo.App. 214, 223 S.W. 975; People v. Keechler, 194 Ill. 235, 62 N.E. 525, 527. The last-cited case holds that the "meaning must be determined by the object sought to be accomplished by the statute in which it is used."

In the ordinance under review the phrase "adjacent lots" is used in further defining the phrase "one location." Therefore, it is apparent that the intention was to protect the gas consumer in the right to measure his gas through a single meter when he used all of it on a single location. Under the circumstances, the word "location" must be given a restricted meaning and refer to a compact tract of land, since ordinarily gas is consumed within buildings, and the location evidently refers to one upon which structures of a character that will permit or require the consumption of gas for their convenient or efficient use exist or are to be constructed. If it were to be used in the broader sense as synonymous with "locality," it would be a useless word in the ordinance, for it will not be presumed that the council was attempting to legislate over matters outside of the city limits. As bearing upon its meaning, too, it must be remembered that unless the lots referred to were adjoining or at least touching each other, it would be necessary to secure from adjoining property owners or from the city (in the event of separation by streets) the privilege of making excavations that would connect fixtures up on the separate lots. The ordinance provides no method of doing this, nor does it make any condition with reference thereto. We think, therefore, that when the object sought to be attained is considered as well as the language used and the language avoided, appellee's fear that the ordinance would compel it to measure through a single meter gas used on tracts separated by intervening streets or lands of other owners, is not well grounded.

We are not convinced beyond a reasonable doubt that the ordinance is unreasonable.

The judgment of the lower court is reversed, and judgment here rendered dissolving the injunction granted in the trial court and denying the prayer of appellee for injunction.

Reversed and rendered.