**GENERAL TELEPHONE COMPANY OF the SOUTHWEST, Appellant,**

v.

**CITY OF PERRYTON, Texas, Appellee.**

**No. 8777.**

Court of Civil Appeals of Texas, Amarillo.

May 31, 1977.

Rehearing Denied June 27, 1977.

Preston, Holt, Harper & Hightower, San Angelo, Wayne L. Goodrum, Lexington, Ky., for appellant.

Lemon, Close, Atkinson & Shearer (R. D. Lemon), Perryton, for appellee.

REYNOLDS, Justice.

The trial court summarily and permanently enjoined a telephone company from unilaterally increasing its rates for extended area service in violation of a city's contractual right to regulate the rates. Without regard to whether or not the contractual right existed, the original judicial jurisdiction to adjudicate the matter terminated when the Public Utility Commission of Texas assumed jurisdiction of all telecommunications in this state before the judgment became final. Reversed and dismissed.

For a number of years, General Telephone Company of the Southwest furnished local telephone service within the City of Perryton, Texas, by virtue of a franchise granted it by the city. In 1968, General Telephone proposed, subject to approval of increases in the rates then authorized, the installation of extended area service by which telephone calls between the cities of Perryton and Booker, Texas, would be made without payment of a toll charge. The governing bodies of Perryton and Booker acquiesced in the proposal, and the official action by Perryton is evidenced by Ordinance No. 405 passed and approved on 15 October 1968. The ordinance authorized increased telephone rates within the corporate limits of Perryton upon the establishment of extended area service between Perryton and Booker, provided that no other type of local service will be offered, and declared that nothing in the ordinance shall affect the city's right, under the law, to regulate the rates charged by General Telephone within the city.

Subsequently on 17 February 1970, the City Council of Perryton enacted Ordinance No. 424 as a franchise agreement between the city and General Telephone for a period of five (5) years from and after 27 Febru-

ary 1970. A cash consideration was fixed, and has been paid annually by General Telephone, to indemnify the city for any damage to its streets, alleys and public grounds caused by the placement of telephone equipment and for the city's superintendence of the agreement. By the fifteenth section of the ordinance "it is mutually understood and agreed that the rates to be charged to inhabitants of the City of Perryton, Texas, for extended area service (in lieu of strictly local exchange service) shall be fixed and regulated by the governing body of said City of Perryton, Texas (provided such City, at such time, retains statutory rate-making authority), in accordance with the statutes and laws of the State of Texas."

Three days before the expiration of the five-year franchise, the Perryton City Council, in response to General Telephone's request for a rate increase, passed and approved its 24 February 1975 Ordinance No. 502 authorizing, effective 16 March 1975, a rate increase within the corporate limits of Perryton for extended area telephone service, and declaring that nothing in the ordinance shall affect the city's right and power under law to regulate the rates within the city. In October of that year, General Telephone requested new rates. On 2 March 1976, the city denied the request. By its 7 April 1976 letter, General Telephone notified the city that since the expiration of the five year period provided by Ordinance No. 424, there is no contract in force which confers any right upon the city to regulate the extended area service rates and that, effective 15 April 1976, the telephone company would place new rates in effect. The city resolved on 15 April 1976 that it would institute legal action unless General Telephone retracted its proposed rate increase and agreed in writing to continue the present rate for a period of three years.

General Telephone increased its rates; the city filed this suit. The city pleaded jurisdiction "over extended area telephone service provided within the City of Perryton" by virtue of both statutory authorization and an express or implied contract affected by Ordinances Nos. 405 and 502.

The city sought judicial declarations that: it has rate making jurisdiction of General Telephone's rates "for extended area service within the City of Perryton, Texas;" General Telephone cannot increase such rates without first obtaining the consent of the city or setting aside, by successful legal action, the rate schedule in Ordinance No. 502; General Telephone be permanently enjoined from unilaterally increasing its rates for extended area service within Perryton's city limits; and that General Telephone refund all unauthorized rates charged.

General Telephone answered with a general denial and pleaded as affirmative defenses that the city had neither statutory authority nor a present contractual right to regulate extended area service rates. Conditioned on the court's determination that the city has the right or power to regulate rates for extended area service, General Telephone counterclaimed for a permanent injunction, enjoining the city from interfering with the telephone company's charging and collecting fair and reasonable rates for extended area telephone service rendered within the corporate limits of the City of Perryton until such time as the city shall prescribe fair and reasonable rates and charges therefor.

Subject to its motion to dismiss or abate General Telephone's counterclaim, the city answered and then moved for summary judgment. To the latter motion was attached the affidavit of the city manager detailing the events and conduct of the parties which we have outlined. General Telephone, relying on the same affidavit, filed its motion for summary judgment.

Severing General Telephone's counterclaim, the trial court denied the telephone company's motion for summary judgment and partially granted the city's summary judgment motion. In rendering summary judgment on 26 August 1976, the court declared that the city has no statutory authority, but does have a contractual right, to regulate General Telephone's extended area service rates within the city. The court then permanently enjoined General

Telephone "from making further unilateral increases of its rates for extended area service within the Plaintiff's city limits," and ordered General Telephone to refund or credit, with interest at the rate of nine per cent (9%) per annum, all unauthorized rates charged.

General Telephone appeals. It submits, in four points of error, that the court erred in rendering summary judgment for the city and in failing to render summary judgment for the telephone company. Under its fifth point, General Telephone urges that the cause is now moot for the reason that the trial court's judgment conflicts with the regulatory authority of the Public Utility Commission of Texas.

The city responds that mootness is not a factor, for the trial court's judgment was entered before the Public Utility Commission of Texas assumed regulatory jurisdiction. And the summary judgment is sustainable, the city argues, because the city discharged its burden of proving a contractual right to regulate the telephone rates for extended area telephone service provided, as the city emphasizes, *within the City of Perryton, Texas.*

Despite the frequent references to "within the city limits," the extended area telephone service over which the city asserts a regulatory right is, by definition, not isolated within the city limits; rather, it obviously is an integration of local and intrastate telephone service. Be that as it may, and without regard to whether the summary judgment proof establishes as a matter of law that there is no genuine issue as to the presence or absence of a contractual right of regulation, we, without belaboring the points, must reverse the judgment and order the proceedings dismissed for the reasons to be now stated.

■ A city has no inherent power to regulate a utility. *Southwestern Bell Telephone Company v. Houston Independent School District,* 397 S.W.2d 419, 421 (Tex. 1965). Fixing and regulating utility rates is a governmental function inherent in the state. The function is legislative in character, and the legislature may delegate the power to rate making governmental agencies or to municipal corporations as to utilities operating within the limits of such municipal corporations. *Kousal v. Texas Power & Light Co.,* 142 Tex. 451, 179 S.W.2d 283, 285 (1944).

■ Early and in lieu of a comprehensive regulatory system, the legislature conferred on the governing bodies of all incorporated cities and towns the power to regulate, by ordinance, all utility rates, including telephone rates. Vernon's Ann.Civ.St. Art. 1119, *et seq.* However, the delegated power of regulation was confined to the municipality's territory. *City of Arlington v. Lillard,* 116 Tex. 446, 294 S.W. 829, 830 (1927). Consequently, a city, while empowered to regulate local telephone service by franchise, was not statutorily granted rate regulatory powers over intrastate calls, *City of Weslaco v. General Telephone Company of the Southwest,* 359 S.W.2d 260, 261 (Tex. Civ.App.—San Antonio 1961, writ ref'd n.r. e.); and, absent regulation by some authorized body, a telephone company could prescribe its own rates subject to the dictates of reasonableness and justice. *Southwestern Bell Telephone Company v. Houston Independent School District, supra* at 422.

■ Nevertheless, where a city and a telephone company contracted for the city's regulation of extended area service—i. e., local service, which the city had statutory authority to regulate, combined with intrastate service, which the city had no statutory authority to regulate—the telephone company would be bound by its contract. *General Telephone Company of the Southwest v. Cities Littlefield,* 498 S.W.2d 375, 378–79 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.). And, yet, because such contracts necessarily are made subject to the paramount constitutional authority of the legislature to regulate utilities, they have a congenital infirmity, *City of Wink v. Wink Gas Co.,* 115 S.W.2d 973, 976 (Tex.Civ.App. —El Paso 1938, writ ref'd), in that they may be modified or superseded by the legislature or its authorized agency at any time. 86 C.J.S. Tel. & Tel., Radio & Television

§ 84 at p. 103. See, also, *Fink v. City of Clarendon,* 282 S.W. 912 (Tex.Civ.App.—Amarillo 1926, no writ).

With the law so structured, the legislature enacted, effective 1 September 1975, the Public Utility Regulatory Act, V.A.C.S. art. 1446c (Supp. 1976), to establish a comprehensive system for regulating public utilities, one of which, as defined in Section 3(c)(2)(a) of the Act, is a telephone system. As it affects this appeal, the Act created the Public Utility Commission of Texas [Sec. 5] with exclusive original jurisdiction over all telecommunication in the state [Sec. 18], the jurisdiction over rates and services to be assumed on 1 September 1976 [Sec. 87(b)]. Repealed effective 1 September 1976 were V.A.C.S. art. 1119 *et seq.,* and all other laws and parts of laws in conflict with the Act [Sec. 90(a)]. Although municipalities were to continue to regulate each local utility inside their boundaries and all rules and regulations pertaining thereto were to remain in effect until the Commission assumed jurisdiction [Sec. 22; Sec. 90(b)], the Act does not contain a savings clause.

 The Act became fully effective five days after the court rendered the summary judgment which, because of the appeal, did not grant any final relief. *Cf. National Carloading Corporation v. Phoenix-El Paso Express, Inc.,* 142 Tex. 141, 176 S.W.2d 564, 568 & 570 (1943), *cert. denied,* 322 U.S. 747, 64 S.Ct. 1156, 88 L.Ed. 1578 (1944). Thus, the legislature's exercise of its constitutional authority to vest exclusive original jurisdiction over all state telecommunications in the Public Utility Commission of Texas terminated the regulatory power, both statutory and contractual, theretofore held by municipalities over telephone systems. Therefore, absent any savings clause in the Act, any right the City of Perryton had to regulate General Telephone's rates and service ceased on 1 September 1976 when the Commission assumed exclusive original jurisdiction of these matters. In a like manner, the operation of the Act deprives the courts of original jurisdiction to determine these pending questions and moots the cause, *Southwestern Bell Telephone Company v. City of Kountze,* 543 S.W.2d 871 (Tex.Civ.App.—Beaumont 1976, no writ), and authorities there cited, because any right which might be determined by this appeal could not be effectuated in the manner now provided by law. *Sterling v. Ferguson,* 122 Tex. 122, 53 S.W.2d 753, 761 (1932).

Accordingly, the summary judgment is reversed and the cause is dismissed. *Danciger Oil & Refining Co. of Texas v. Railroad Commission of Texas,* 122 Tex. 243, 56 S.W.2d 1075 (1933). Costs are assessed one-half against each party.