CITY OF EL PASO, Texas, et al., Appellants,

v.

PUBLIC UTILITY COMMISSION of Texas, et al., Appellees.

No. 12971.

Court of Civil Appeals of Texas, Austin.

July 11, 1979.

Rehearing Denied July 25, 1979.

Larry A. Baskind, Diamond, Rash, Leslie & Smith, El Paso, for appellants.

Mark White, Atty. Gen., Joyce Beasley, Asst. Atty. Gen., Austin, for Public Utility Commission.

David H. Wiggs, Jr., Michael D. McQueen, Kemp, Smith, White, Duncan & Hammond, El Paso; and Barry K. Bishop, Clark, Thomas, Winters & Shapiro, Austin, for El Paso Elec. Co.

O'QUINN, Justice.

From judgment of the district court approving in substantial part an order of the Public Utility Commission under which the El Paso Electric Company was granted a rate increase, the City of El Paso and the City of Anthony, municipalities served by the electric company, have appealed and bring two points of error.

Appellants contend that (1) it was error to affirm action of the Commission by which $306,899.00 of electric plant held for future use was included in the rate base, and (2) error to affirm the Commission order setting a rate higher than the maximum rate provided in the franchise agreement between the City of El Paso and the electric company. We will overrule both points of error and affirm the judgment of the trial court.

Appellants argue that only property "used and useful" in providing service should be included in the rate base, but concede that there can be exceptions to the rule.

The property held for future use, as scheduled by El Paso Electric Company under the uniform accounting system adopted and required by rules of the Utility Commission, consisted of six plots of land, five of which lie in El Paso County. The total value shown by the schedule was $396,-819.00. In its findings of fact, the Commission listed, as an adjustment to be included in the rate base, "Electric plant held for future use" at a total of $306,899.00.

To this listing was added the statement, "Electric plant held for future use is included as it constitutes property purchased by the company in anticipation of future needs and as such will ultimately result in more savings to its ratepayers than if all plant were purchased for immediate use only."

To be classified in the accounting system, "Electric Plant Held for Future Use" must meet the definition prescribed: "This account shall include the original cost of electric plant (except land and land rights) owned and held for future use in electric service under a definite plan for such use. . . . This account shall also include the original cost of land and land rights owned and held for future use in electric service under a plan for such use . . . ."

A witness for the electric company, qualified as a rate engineer, testified at the rate hearing, "Plant held for future use was allocated on the basis of demand responsibility since the plant so classified consists primarily of sites for future transmission and generation site." The listing found in the findings of fact, already referred to, would indicate that the Commission, upon considering the potential uses to be made of the sites, determined that the property should be included in the rate base.

Appellants find comfort in language of the Supreme Court in *Southwestern Bell Telephone Company v. Public Utility Commission*, 571 S.W.2d 503, 516 (Tex.1978), where the Court said, "In the future, the Commission should consider the nature and present usefulness of the parcels of land and determine whether or not such property should be included in the rate base." The Court there was not reviewing a substantial evidence point of error, which is the issue in this appeal.

We are of the view that the Commission's finding, to include the land sites in the rate base, was supported by substantial evidence. In review of an administrative proceeding, as pointed out by the Supreme Court in 1977, " . . . it has not taken much evidence under our decisions to qualify as substantial. In fact, the evidence may be substantial and yet greatly preponderate the other way." *Lewis v. Metropolitan Savings and Loan Association*, 550 S.W.2d 11, 13 (Tex.1977).

The Court, in *Southwestern Bell*, also said that the Commission had " . . . erred in its blanket exclusion of this property from the rate base. However, we do not

consider such action, under the record, confiscation." As pointed out in a dissenting opinion, the majority of the Court considered the value of the land excluded too small to render the rate, arrived at without that land in the rate base, confiscatory or unreasonably inadequate.

In this lawsuit the situation is reversed, where the contested sum of $306,899 was *added,* not excluded, and the total rate base was determined to be $157,894,307. In *Southwestern Bell* the property omitted had a value of $1,136,000, whereas the total rate base amounted to $3,000,000,000. In the present case, the property included was about ⁷⁄₁₀th of one percent of the total rate base.

The Supreme Court in *Southwestern Bell* considered the reduction of the telephone company's rate, by reason of "blanket exclusion" of $1,136,000 from the rate base of three billion dollars, so inconsiderable as not to amount to confiscation, and by implication applied the principle of "*De minimis non curat lex,*" usually translated to say, "The law does not notice trifling matters." [1] We consider the principle of *de minimis* appropriate in this case and conclude that by including the disputed $308,899 in the rate base, an amount was added which was so minimal as not to result in a rate to the consumer that was exorbitant, unreasonable, oppressive, unfair, unjust, or unlawful. The first point of error is overruled.

Under their second point of error appellants contend that the franchise contract between the City of El Paso and the El Paso Electric Company should prevail to prevent rate schedules "higher than the corresponding lowest rate schedules at any other point served by the Company's system," which the rates set by the Commission would permit.

The trial court found that the Commission's order ". . . effectively held that the rates provided for [in the order] . . . were controlling over . . . the Franchise Agreement . . ." The

trial court adjudged that the franchise agreement ". . . does not serve to limit the power of the . . . Commission . . . to set just and reasonable rates, and when established, said rates shall take precedence over franchise rates and be the rates actually imposed and placed into effect."

The City Council of the City of El Paso, in March of 1971, passed an ordinance granting a franchise to the El Paso Electric Company, which the company accepted. Provision was made in the franchise that "The rate schedules in the City of El Paso shall never be higher than the corresponding lowest rate schedules at any other point served by the Company's system." The City contends that the rates fixed by the Commission, if charged by the electric company, will be in excess of the "corresponding lowest rate schedules" at other points served by the company, and therefore in violation of the franchise agreement.

Constitutional control of privileges and franchises granted by the Legislature, or created under its authority, was established for the first time in Texas under the Constitution of 1876. The final portion of Section 17, Article I, of the Constitution provides: ". . . no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof."

It is settled that cities have no inherent power to regulate rates of public utilities, and such powers as municipalities do exercise in rate making must be conferred by the State. *Southwestern Bell Telephone Company v. Houston Independent School District,* 397 S.W.2d 419, 421 (Tex.1965); *Texas-Louisiana Power Company v. City of Farmersville,* 67 S.W.2d 235, 238 (Tex.Comm'n App.1933); *State v. Lone Star Gas Company,* 86 S.W.2d 484, 497 (Tex. Civ.App. Austin 1935, writ ref'd), reversed

1. *Minimis,* genitive of *minimus,* the superlative of *parva* (small); "*de minimis*" thus literally means "of the least of the small."

on other grounds, 304 U.S. 224, 58 S.Ct. 883, 82 L.Ed. 1304 (1938).

With passage of the Public Utility Regulatory Act in 1975 (Art. 1446c, V.A.T.S.), exclusive appellate jurisdiction in rate making matters was vested by the Legislature in the Public Utility Commission, to which the Legislature delegated such power. Section 21 of the Utility Act preserved the right of municipalities to grant or refuse franchises to use the streets and alleys, " . . . but no provision of any franchise agreement shall limit or interfere with any power conferred on the commission . . . " including rate making powers.

█ It is clear from the Utility Act that the Legislature intended that franchise agreements, tending to interfere with the power to determine rates, would be ineffective and in no way controlling in the rate making process. The El Paso franchise contract with the electric company was made subject to the paramount constitutional authority of the Legislature to regulate utilities and determine rates to be charged by utilities, inasmuch as such contracts may be superseded at any time by the Legislature, or the Commission, as the authorized agency of the Legislature. *General Telephone Company of the Southwest v. City of Perryton*, 552 S.W.2d 888, 891 (Tex.Civ.App. Amarillo 1977, writ ref'd n. r. e.); *City of Wink v. Wink Gas Company*, 115 S.W.2d 973, 976 (Tex.Civ.App. El Paso 1938, writ ref'd).

We have examined with care the several authorities relied upon by appellants under which appellants urge that the Commission was bound to make findings that setting aside the franchise provision, purportedly fixing a maximum for rates charged by the electric company, was in the public interest.

We conclude that ample authority is given the Legislature under the Constitution to delegate to the Commission power to determine rates under the Utility Regulatory Act, and to disregard the franchise as interfering with such power, without the necessity of an affirmative finding that to do so was in the public interest. The Legis-

lature declared in the Utility Act that it was " . . . enacted to *protect the public interest inherent in the rates* and services of *public utilities* . . . ." (Sec. 2, Art. 1446c, emphasis added). Point of error two is overruled.

The judgment of the trial court is in all things affirmed.

Affirmed.